IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


U.S. COMMODITY FUTURES TRADING    )
COMMISSION,                        )
                                   )
              Plaintiff,           )
                                   )
      v.                           )        1:11CV434
                                   )
NEAL E. HALL, d/b/a                )
SHOWMEMYFUTURE.COM,                )
                                   )
              Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Plaintiff's Motion for Summary Judgment Against Defendant Neal E. Hall (Docket Entry 37). (See Docket Entry dated July 13, 2012.) For the reasons that follow, the instant Motion should be granted.

I.  BACKGROUND

Plaintiff, the United States Commodity Futures Trading Commission ("CFTC"), brought this action against Defendant, proceeding *pro se*, for violations of: (1) Section 4m(1) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 6m(1), for failure to register as a commodity trading advisor ("CTA") (Docket Entry 1, ¶¶ 29-33); (2) Commission Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3), for failure to provide the required cautionary statements concerning client testimonials (Docket Entry 1, ¶¶ 34-

38); and (3) Commission Regulation 4.41(b)(1), 17 C.F.R. § 4.41(b)(1), for failure to provide the required cautionary statement regarding limitations of simulated or hypothetical trading results (Docket Entry 1, ¶¶ 39-42).[1]

The unrebutted evidence before the Court[2] reveals the following:

(1) "during the relevant period, [Defendant] wrote and continued to write the [content] for the website, www.showmemyfuture.com [(the 'Website')]" (Docket Entry 38-1 at 79-80);

(2) "the [Website] advertises [Defendant's] trading system for E-mini S&P's 500 Futures contracts" (id. at 80);

(3) "during the relevant period, in exchange for payment of a monthly fee, [Defendant] advised [his] . . . subscribers, via e-mail[,] as to when they should open

---

[1] Congress gave the Commission the ability "to make and promulgate such rules and regulations as, in the judgment of the Commission, are reasonably necessary to effectuate any of the provisions or the accomplish any of the purposes of th[e] [Act]." 7 U.S.C. 12a(5).

[2] On January 19, 2012, the undersigned held a hearing, in part, to address Defendant's failure to respond to Plaintiff's Requests for Admission. (See Docket Entry dated Jan. 19, 2012; see also Docket Entry 38-1.) With the consent of both Parties (see Docket Entry 38-1 at 77-78), the undersigned read each of Plaintiff's Requests for Admission in open Court (with the exception of the seventh Request for Admission which required referencing several exhibits not readily accessible (id. at 81-82, 87)) and Defendant responded with admissions (id. at 79-87).

-2-

and close positions in E-mini S&P's 500 Futures Contracts" (id.);

(4) "from at least June of 2010 until May 31, 2010, [Defendant] plac[ed] trades in some of [his] client[s'] trading accounts" (id.);

(5) "from at least June of 2010 until May 31, 2011, some of [Defendant's] clients paid [him] via Pay Pal to place trades in their trading accounts" (id. at 81);

(6) "[Defendant] continued to place trades in some of [his] client[s'] trading accounts in exchange for payment via Pay Pal, even after [his] power of attorney over those accounts had been revoked" (id.);

(7) "during the relevant time period, [the Website] contained the statement, 'Our members have historically doubled their money in less than 12 months'" (id. at 82-83);

(8) "at different times during the relevant time period, [the Website] contained the following statements: A, 'You can view information about a managed account that we can trade for you' . . . [and] B, 'You can view information about an auto trade account that we can trade for you'" (id. at 83);

(9) "during the relevant time period, including from at least June of 2010 until May 31, 2011, [the Website] did not have the following specific cautionary language,

-3-

verbatim[:] 'These results are based on simulated or hypothetical performance results that have certain inherent limitations. Unlike the results shown in an actual performance record, these results do not represent actual trading. Also, because these trades have not actually been executed, these results may have under or over compensated for the impact, if any, of certain market factors, such as lack of liquidity.

'Simulated or hypothetical trading programs in general are also subject to the fact that they are designed with the benefit of hindsight. No representation is being made that any account will or is likely to achieve profits or losses similar to those being shown.'" (<u>id.</u> at 84-85);

(10) "during the relevant time period, [the Website] featured testimonials from clients" (<u>id.</u> at 85);

(11) "from at least June of 2010 until May 31, 2011,[the Website] did not have a disclaimer stating that the testimonials may not be representative of the experience of other clients, and that the testimonials are no guarantee of future performance or success" (<u>id.</u> at 85-86);

(12) "during the relevant period, [the Website] featured, A, a link to a spreadsheet history chart that contained back

-4-

tested or hypothetical trading results[; and] B, the following statement; 'The best percentage accuracy rate of any existing S&P futures trading program on the internet guaranteed.'" (<u>id.</u> at 86); and

(13) "during the relevant period, [Defendant has] never been registered in any capacity with the [CFTC]" (<u>id.</u> at 86-87).[3]

Through the instant Motion, Plaintiff "requests that this Court (1) enter judgment as a matter of law against Defendant on all counts of the [] Complaint, (2) enter an order of permanent injunction, including a trading prohibition, and (3) impose a civil monetary penalty of $420,000 against [Defendant] and any other relief the Court deems is necessary or appropriate." (Docket Entry 37 at 3.)

## II. STANDARD

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

---

[3] Moreover, Sandra A. Jung, a Document Research Supervisor with the CFTC (Docket Entry 38-3, ¶ 1), avers that she "caused to be conducted a review of [the] official CFTC [registration] records from July 1982 to the present" and found that "[t]here is no record of a registration in any capacity for [Defendant]" (<u>id.</u>, ¶¶ 4-5).

242, 255 (1986).  In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III.  DISCUSSION

#### A.  Liability

The unrebutted evidence establishes that, at all relevant times, Defendant qualified as a CTA under the Act and that his actions violated 7 U.S.C. § 6m(1), 17 C.F.R. § 4.41(a)(3), and 17 C.F.R. § 4.41(b)(1).  The Act defines a CTA, in relevant part, as "any person who . . . for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in . . . any contract of sale of a commodity for future delivery . . . ."  7 U.S.C. 1a(12)(A).  It is undisputed that, during the relevant period, "in exchange for payment of a monthly fee, [Defendant] advised [his] . . . subscribers, via e-mail as to when they should open and close positions in E-mini S&P's 500 Futures Contracts" (see Docket Entry 38-1 at 80) and that Defendant's Website "advertise[d]

-6-

[Defendant's] trading system for E-mini S&P's 500 Futures contracts" (id.). Accordingly, regardless of whether or not Plaintiff considered himself a CTA, he met the definition for purposes of the Act. See C.F.T.C. v. Heffernan, No. 4:04-23302-25, 2006 WL 2434015, at *6 (D.S.C. 2006) (unpublished) (finding defendant met definition of CTA where defendant "provided commodity futures trading advice for compensation or profit by selling the trading techniques and electronic mail subscription service [and] the information provided was designed to advise investors trading in S&P500 futures contracts").

Section 6m(1) states in relevant part:

It shall be unlawful for any [CTA] . . ., unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such [CTA] . . . *Provided*, That the provisions of this section shall not apply to any commodity trading advisor who, during the course of the preceding twelve months, has not furnished commodity trading advice to more than fifteen persons and who does not hold himself out generally to the public as a commodity trading advisor . . . .

7 U.S.C. § 6m(1).[4]

Given that Defendant has admitted his lack of registration as a CTA with the CFTC (see Docket Entry 38-1 at 86-87), his actions,

---

[4] Despite Defendant's contentions regarding the vagueness of the term "holding out" as it appears in the foregoing, cited language (see Docket Entry 39 at 5, 8-9; see also Docket Entries 22, 34), the unrebutted evidence establishes that Defendant represented to the public (via the Website) that he took actions commensurate with a CTA as that term is defined in the Act, thereby "hold[ing] himself out generally to the public as a [CTA]," 7 U.S.C. § 6m(1).

including "advis[ing] [his] . . . subscribers, via e-mail as to when they should open and close positions in E-mini S&P's 500 Futures Contracts" (see Docket Entry 38-1 at 80), violated the provisions of Section 6m(1). See Heffernan, 2006 WL 2434015, at *7 (finding defendant violated 7 U.S.C. § 6m(1) where "defendant used the mails, telephone, electronic mail, and the internet while acting as a . . . CTA"); see also C.F.T.C. v. Prestige Ventures Corp., No. CIV-09-1284-R, 2010 WL 8355003, at *5 (W.D. Okla. Oct. 27, 2010) (unpublished) (including internet as instrumentality of interstate commerce); S.E.C. v. Novus Techs., LLC, No. 2:07-CV-235-TC, 2010 WL 4180550, at *13 (D. Utah Oct. 20, 2010) (unpublished) (same).

The unrebutted evidence similarly establishes that Plaintiff failed to comply with CFTC Regulations 4.41(a)(3) and 4.41(b)(1). Regulation 4.41(a)(3) states:

(a) No . . . [CTA] . . . may advertise in a manner which:

. . .

> (3) Refers to any testimonial, unless the advertisement or sales literature providing the testimonial prominently discloses:

> (i) That the testimonial may not be representative of the experience of other clients;

> (ii) That the testimonial is no guarantee of future performance or success; and

> (iii) If, more than a nominal sum is paid, the fact that it is a paid testimonial.

17 C.F.R. § 4.41(a)(3).

-8-

Regulation 4.41(b)(1) provides:

> No person may present the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a . . . [CTA] . . . unless such performance is accompanied by one of the following:
>
> > (i) The following statement: "These results are based on simulated or hypothetical performance results that have certain inherent limitations. Unlike the results shown in an actual performance record, these results do not represent actual trading. Also, because these trades have not actually been executed, these results may have under- or over-compensated for the impact, if any, of certain market factors, such as lack of liquidity. Simulated or hypothetical trading programs in general are also subject to the fact that they are designed with the benefit of hindsight. No representation is being made that any account will or is likely to achieve profits or losses similar to these being shown."; or
> >
> > (ii) A statement prescribed pursuant to rules promulgated by a registered futures association pursuant to section 17(j) of the Act.

17 C.F.R. § 4.41(b)(1).

According to the unrebutted evidence, "during the relevant time period, [the Website] featured testimonials from clients" (Docket Entry 38-1 at 85) as well as hypothetical trading results (id. at 86), but failed to contain the required cautionary language with respect to either (see id. at 84-86). Defendant contends that none of the above-cited Rules or Regulations apply to him because he "was not and never has been required to register as and should not be considered a CTA according to specific rule and law."

-9-

(Docket Entry 39 at 1-2; see also id. at 10 ("[D]efendant was not required to [comply with Regulation 4.41(a)(3)] since he was not a CTA and was not obligated to follow the rules of a CTA."); id. ("[D]efendant was not required to [comply with Regulation 4.41(b)(1)] since he was not a CTA and was not obligated to follow the rules of a CTA").)

In support of this contention, Defendant points to the following language in the Code of Federal Regulations:

> (a) A person is not required to register under the Act as a [CTA] if:
>
> . . . .
>
>> (9) It does not engage in any of the following activities;
>>
>> (i) Directing client accounts; or
>>
>> (ii) Providing commodity trading advice based on, or tailored to, the commodity interest or cash market positions or other circumstances or characteristics of particular clients; or
>>
>> (10) If, as provided for in section 4m(1) of the Act, during the course of the preceding 12 months, it has not furnished commodity trading advice to more than 15 persons and it does not hold itself out generally to the public as a [CTA.]

17 C.F.R. § 4.14(a). Under Defendant's interpretation, the use of "or" between Section 4.14(a)(9)(i) and 4.14(a)(9)(ii) "means that either one or the other would individually qualify [D]efendant as an exemption, so therefore technically [D]efendant could direct accounts so long as they were all directed identically, but if he

didn't direct accounts, however did provide commodity advice to individuals tailored to their circumstances, which would also qualify as exemption." (Docket Entry 39 at 7.) Defendant similarly reads the use of "or" between Section 4.14(a)(9) and 4.14(a)(10) as "meaning that if either of these conjunctive conditions is true, then [D]efendant qualifies as an exemption." (Id.) Thus, Defendant concludes that, because "at no time did [he] give advice that was tailored to even one individual," he was not a CTA and was not required to register as a CTA. (Id.)

Defendant's position does not comport with a proper reading of the Regulation. Rather, by conducting any of the activities listed in Section 4.14(9), Defendant failed to meet the registration exemption of Regulation 4.14. Because Defendant admits that he directed client accounts (see Docket Entry 38-1 at 80-81; see also Docket Entry 39 at 7-8 ("Yes [] [D]efendant traded accounts for individuals who ask him to, and this could be referred to as 'directing' an account . . . .")), and did so without registering as a CTA (see Docket Entry 38-1 at 86-87), and because the Website included both client testimonials and hypothetical trading results without the required, corresponding cautionary language (id. at 84-87), the Court should enter summary judgment in favor of Plaintiff.

B.   Relief

Plaintiff moves the Court to (1) "enter an order of permanent injunction, including a trading prohibition" (Docket Entry 37 at

-11-

3); and (2) "impose a civil monetary penalty of $420,000 against [Defendant]" (id.).

    i.  *Permanent Injunction*

    "Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond." 7 U.S.C. § 13a-1(b). "An injunction prohibiting a party from engaging in conduct that violates the provisions of a statute is appropriate when there is a likelihood that, unless enjoined, the violations will continue." C.F.T.C. v. American Bd. of Trade, Inc., 803 F.2d 1242, 1250-51 (2d Cir. 1986). Moreover, several courts have imposed broad permanent injunctions on violators, barring all trading of commodity futures contracts on behalf of others. See C.F.T.C. v. United Investors Grp., Inc., 440 F. Supp. 2d 1345, 1362 (S.D. Fla. 2006), aff'd in part and vacated in part on other grounds, C.F.T.C. v. Levy, 541 F.3d 1102 (11th Cir. 2008); C.F.T.C. v. Noble Wealth Data Info. Servs., Inc., 90 F. Supp. 2d 676, 695 (D. Md. 2000), aff'd in part & rev'd in part on other grounds, C.F.T.C. v. Baragosh, 278 F.3d 319 (4th Cir. 2002); C.F.T.C. v. Rosenberg, 85 F. Supp. 2d 424, 456 (D.N.J. 2000). In rare circumstances, courts have permanently enjoined violators from all commodities trading, including from their personal accounts. See C.F.T.C. v. Castillo, No. 3:06CV2540-TEH, 2008 WL 2971665, at *8 (N.D. Cal. July 11, 2008) (unpublished); C.F.T.C. v. Poole, No. 1:05CV859, 2006 WL 1174286, at *6 (M.D.N.C. May 1, 2006) (unpublished).

In determining the appropriateness of an injunction, "'the ultimate test . . . is whether the defendant's past conduct indicates there is a reasonable likelihood of further violations in the future.'" C.F.T.C. v. Wilshire Inv. Mgmt. Corp., 531 F.3d 1339, 1346 (11th Cir. 2008) (quoting S.E.C. v. Caterinicchia, 613 F.2d 102, 105 (5th Cir. 1980)). In that regard, the Court should consider the following factors:

> [T]he egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

Id. (quoting S.E.C. v. Carriba Air., Inc., 681 F.2d 1318, 1322 (11th Cir. 1982)). "The standard for an injunction under the Act differs from that in the normal civil context in that proof of irreparable harm is not required." C.F.T.C. v. American Metals Exch. Corp., 991 F.2d 71, 74 n.3 (3d Cir. 1993).

On the instant facts, the relevant factors weigh in favor of granting Plaintiff's request for a permanent injunction. As Plaintiff notes (see Docket Entry 38 at 14), Defendant's conduct spanned a 12-month period (see Docket Entry 38-1 at 84), thereby establishing a systematic pattern of activity. See C.F.T.C. v. Hunt, 591 F.2d 1211, 1220 (7th Cir. 1979) ("When the violation has been founded on systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future

-13-

misconduct."); _see also_ _C.F.T.C. v. Aurifex Commodities Research Co._, No. 1:06-CV-166, 2008 WL 299002, at *9 (W.D. Mich. Feb. 1, 2008) (unpublished) (citing same). Evidently, Defendant took actions without first acquainting himself with the Rules and Regulations governing his actions (_see_ Docket Entry 38-1 at 10 ("I don't know the rules, I don't know the regulations.")) and Defendant appears unwilling and/or unable to comport his activity with the applicable Rules and Regulations (_see_ _id._ ("[W]hen I looked on the internet [for the applicable Rules and Regulations], some of this stuff just seemed like -- what's a better word to say than gobbledygook.").) Finally, Defendant maintains complete innocence - denying any wrongdoing for the foregoing acts. (_Id._ at 10 ("I'm just defending myself because I know I'm innocent.").) These circumstances establish "a likelihood that, unless enjoined, the violations will continue," _American Bd. of Trade_, 803 F.2d at 1250-51, and the Court thus should enter a permanent injunction against Defendant.

As to the scope of the permanent injunction, the Complaint seeks to bar "any conduct or activity that . . . . involves . . . entering into any transactions involving commodity futures, options on commodity futures, [and related financial instruments] . . . for his own personal accounts or for any accounts in which he has a direct or indirect interest." (_See_ Docket Entry 1 at 12.) However, Plaintiff's instant Motion neither specifically requests

-14-

an injunction against personal trading nor provides support for such a prohibition. (See Docket Entry 38 at 13-17.) In the instant case, Defendant's past conduct and denial of wrongdoing create a risk of future misconduct sufficient to justify a lifetime registration ban and prohibition on trading for others. The record, however, does not reflect aggravating circumstances of the sort present in cases in which courts imposed bans on even personal trading. See Castillo, 2008 WL 2971665, at *5 ("Clients lost $814,858.89 through purchasing Defendants' trading systems."); Poole, 2006 WL 1174286, at *3 ("[D]efendant defrauded clients and prospective clients by providing fictitious client testimonials attesting to the success that purported clients had achieved using the trading system."). The Court thus should not adopt an injunction as broad as requested in the Complaint.

### ii. Civil Monetary Penalty

"In any action brought under this section, the Commission may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation[,] . . . a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation[.]" 7 U.S.C. § 13a-1(d)(1). The Code of Federal Regulations increases this amount for acts committed after October 23, 2008: the "inflation-adjusted maximum civil monetary penalty for each violation of the [Act] or the rules, regulations

-15-

or orders promulgated thereunder that may be assess or enforced under the [Act] in . . . a civil action in Federal court [is] . . . not more than the greater of $140,000 or triple the monetary gain to such person for each such violation[.]" 17 C.F.R. § 143.8(a)(ii)(D). Plaintiff "seeks the maximum fine of $140,000 or $420,000 for all three violations as alleged in the [] Complaint." (See Docket Entry 38 at 17.) According to Plaintiff, "a $420,000 civil monetary penalty, plus a lifetime registration and trading ban, recognizes the seriousness of the violations and will act as a deterrent to future violations of the Act and Regulations." (Id.)

"In evaluating civil penalties under the Act, courts have considered the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist." C.F.T.C. v. Gresham, No. 3:09-CV-75-TWT, 2011 WL 8249266, at *7 (N.D. Ga. Sept. 8, 2011) (unpublished). "In calculating a civil penalty, 'the financial benefit that accrued to the respondent and/or the loss suffered by customers as a result of the wrongdoing are especially pertinent factors.'" R&W Technical Servs. Ltd. v. C.F.T.C., 205 F.3d 165, 178 (5th Cir. 2000) (quoting In re Grossfeld, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 44,468 & n. 34. (Dec. 10, 1996)). "The [C]ourt may use such a fine as a deterrent of future violations, but the amount of the fine should be proportional to the gravity of the offenses committed."

C.F.T.C. v. Premium Income Corp., No. 3:05-CV-0416-B, 2007 WL 4563469, at *7 (N.D. Tex. Dec. 28, 2007) (unpublished) (internal quotation marks omitted). In addition, some authority establishes that "the [Court] may, in its discretion, consider Defendant['s] net worth in assessing a civil penalty under 7 U.S.C. § 13a-1(d)(1)." C.F.T.C. v. King, No. 3:06-CV-1583-M, 2007 WL 1321762, at *5 (N.D. Tex. May 7, 2007) (unpublished); see also C.F.T.C. v. R.J. Fitzgerald & Co., No. 8:99-CV-1558-T-MSS, 2006 WL 1406542, at *1 (M.D. Fla. May 19, 2006) (unpublished) ("The case law cited by [the] [d]efendants shows that the changes in [the] Act in 1992 does [sic] not bar the introduction of such evidence. The Court will consider evidence of [the] [d]efendants' 'net worth' or ability to pay when determining the amount of civil penalties to assess this case.").[5]

On the facts of this case, the Court should not impose the maximum monetary civil penalty. As an initial matter, the record does not reflect particularly egregious actions by Defendant, such as facts indicating that he knowingly defrauded clients, see Wilshire Inv. Mgmt., 531 F.3d at 1346 ("Defrauding customers is a

_____

[5] The court in King concluded that although Section 209 of the Futures Trading Practices Act of 1992, Pub. L. No. 102-546, § 209, 106 Stat. 3590, 3606-07 (1992), "modified 7 U.S.C. § 9a to no longer require the consideration of, in the Commission's assessment of a civil monetary penalty under 7 U.S.C. § 9, 15, the net worth of the defendant," King, 2007 WL 1321762, at *5 (emphasis added), it did not limit the court's ability to consider such information in assessing a civil monetary penalty under 7 U.S.C. § 13a-1(d)(1), id.

violation of the core provisions of the [Act] and should be considered very serious." (internal quotation marks omitted)), or that he misappropriated client funds, see C.F.T.C. v. Driver, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012) ("Misappropriation or diversion of funds entrusted to one for trading purposes is willful and blatant fraudulent activity." (internal quotation marks omitted)). Most importantly, the lack of evidence of customer losses or complaints identified by Plaintiff (see Docket Entry 38) distinguishes this case from those in which courts applied the maximum penalty. See, e.g., Noble Wealth, 90 F. Supp. 2d at 694 (imposing maximum penalty of triple Defendant's monetary gain where "Defendant engaged in repeated core violations of the Act over a period of several years and received direct benefit from [company's] fraudulent operations despite the mounting losses of its customers.").

Nor does the record contain evidence that Defendant enjoyed a financial windfall from his actions; in fact, Defendant reported indigence several times (see Docket Entry 38-1 at 31 ("I don't have money to hire anybody, I don't have money to hire a lawyer, I'm barely making my house payment.").) Defendant's asserted indigence also weighs against imposing the maximum penalty. See, e.g., Rosenberg, 85 F. Supp. 2d 424, 455 (imposing no civil monetary penalty on top of restitution order because Defendant "d[id] not have the financial means to pay any amount set by the Court").

-18-

Nonetheless, Defendant's failure to accept responsibility for his actions and insistence that the Rules and Regulations do not apply to him (see Docket Entry 39 at 1-2) justify the imposition of a substantial penalty. See United Investors Grp., 440 F. Supp. 2d at 1361. An amount of half of what Plaintiff requests – i.e., half of the maximum penalty – would meet the goals of punishment and deterrence and would more appropriately reflect the gravity of the misconduct at issue. Accordingly, the Court should award a civil penalty in the amount of $210,000 against Defendant.

## IV. CONCLUSION

The unrebutted evidence before the Court establishes that Defendant qualified as a CTA under the Act and violated 7 U.S.C. § 6m(1), 17 C.F.R. § 4.41(a)(3), and 17 C.F.R. § 4.41(b)(1).

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion for Summary Judgment Against Defendant Neal E. Hall (Docket Entry 37) be granted.

**IT IS FURTHER RECOMMENDED** that the Court enter a permanent injunction prohibiting Defendant and any of his agents, servants, employees, assigns, attorneys, and persons in active concern or participation with the Defendant, including any successor thereof, from engaging, directly or indirectly, in any conduct or activity that:

-19-

(a) violates Section 4m(1) of the Act, 7 U.S.C. § 4m(1), or Regulations 4.41(a)(3) and (b)(1), 17 C.F.R. §§ 4.41(a)(3) and (b)(1);

(b) results in trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, codified as amended at 7 U.S.C. § 1a(40));

(c) involves controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts");

(d) relates to or otherwise involves soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

(e) relates to or otherwise involves applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from

-20-

registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

(f)   constitutes acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)), agent or any other officer or employee of any person registered exempted from registration or required to be registered with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

**IT IS FURTHER RECOMMENDED** that the Court assess a civil monetary penalty against Defendant in the amount of $210,000.


_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

November 21, 2013